```
IN THE UNITED STATES DISTRICT COURT FOR THE
         EASTERN DISTRICT OF OKLAHOMA

LISA M. WHISTLER,              )
                               )
        Plaintiff,             )
                               )
v.                             )  Case No. CIV-13-388-RAW-KEW
                               )
CAROLYN W. COLVIN, Acting      )
Commissioner of Social         )
Security Administration,       )
                               )
        Defendant.             )
```

## REPORT AND RECOMMENDATION

Plaintiff Lisa M. Whistler (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on June 3, 1981 and was 32 years old at the time of the ALJ's decision. Claimant completed her high school education and took business and certified nurse's aide ("CNA") classes at a vo-tech but did not receive her certification for CNA. Claimant has worked in the past as a cashier, apartment manager, store manager/supervisor, and ice cream maker. Claimant alleges an

inability to work beginning August 26, 2009 due to limitations resulting from panic attacks, cancer surgeries, and fibromyalgia.

## Procedural History

On November 17, 2010, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. An administrative hearing was conducted by Administrative Law Judge Bernard Porter ("ALJ") on March 6, 2013 in McAlester, Oklahoma. The ALJ issued an unfavorable decision on March 29, 2013. On July 17, 2013, the Appeals Council denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she retained the RFC to perform less than a full range of light work.

## Error Alleged for Review

Claimant asserts the ALJ committed error in (1) ignoring probative evidence regarding the treatment of Claimant's mental impairments; (2) engaging in an erroneous RFC analysis; and (3) *de*

4

*facto* reopening Claimant's earlier application for benefits.

**Evaluation of the Medical Evidence**

In his decision, the ALJ determined Claimant suffered from the severe impairments of major depression, post traumatic stress disorder, panic disorder with agoraphobia, borderline personality disorder, impulse control disorder, obesity, and diabetes mellitus. (Tr. 12). He concluded that Claimant retained the RFC to perform less than a full range of light work. (Tr. 15). In so doing, the ALJ found Claimant should never climb ladders, ropes, or scaffolds or crawl. He also found Claimant should avoid hazards such as unprotected heights, moving mechanical parts, and temperature extremes. Claimant is limited in the ALJ's RFC to simple tasks and simple work-related decisions. Claimant was found to have no more than occasional interaction with co-workers and supervisors. She should have no interaction with the public. The ALJ also determined Claimant may be off task for up to 5% of the workday. (Tr. 15). After consultation with avocational expert, the ALJ found Claimant could perform the representative jobs of housekeeper/cleaner, garment sorter, and production assembler, all of which exist in sufficient numbers in both the national and regional economies according to the expert. (Tr. 20). The ALJ, therefore, concluded Claimant was not disabled. (Tr. 20-21).

Claimant first contends that ALJ failed to adequately consider her mental impairments in his decision.  On September 16, 2010, Claimant sought treatment at the Carl Albert Community Mental Health Center.  She was evaluated by Ms. C. Baugh, a nurse practitioner and diagnosed with major depressive disorder and borderline personality disorder.  Claimant was prescribed medication for the condition. (Tr. 412).  The medicine regimen was altered the next month when Claimant reported suffering from panic attacks. (Tr. 411).

On January 27, 2011, Claimant reported she was having panic attacks and only left her house once per week.  She also stated that her depression was getting worse and that she was suffering from extreme fatigue.  Claimant's medication was modified. (Tr. 539).

On April 25, 2011, Claimant reported to Dr. Theresa Farrow that she was doing better on the current medications.  Dr. Farrow noted a slight psychomotor retardation with no abnormal movements.  Claimant's affect was anxious/fearful, depressed/sad.  Her mood was depressed and anxious.  Dr. Farrow diagnosed Claimant with bipolar disorder, severe, without psychotic features and with PTSD.  Claimant's medication was again modified. (Tr. 535).

On July 7, 2011, Claimant told Dr. Farrow that she was feeling

like the Cymbalta she was taking was doing nothing at all. She reported discontinuing the Remeron because it made her "feel like a Zombie the next day." Claimant continued to feel very depressed, very anxious, and was having lots of panic attacks. Dr. Farrow diagnosed Claimant with bipolar disorder and PTSD. Claimant was started on Prozac and continued with Neurontin. (Tr. 533)>

On August 31, 2011, Claimant reported to Dr. Farrow that she was less depressed and anxious. However, the Prozac was causing her to be agitated, irritable, and to have muscle spasms in her legs and feet which were painful at times. Dr. Farrow noted Claimant was slightly hyperactive and had an anxious/fearful, depressed/sad affect. Her mood was depressed, anxious, and matched her affect. Claimant started treatment with Zoloft, discontinued Prozac, and continued with Neurontin. (Tr. 531).

On November 2, 2011, Claimant reported she went off of the Zoloft because it made her feel more agitated. Claimant stated her depression and anxiety was about the same. She continued to have problems sleeping and with energy. Dr. Farrow found Claimant to be cooperative, hyperactive, and restless/pacing. Her affect was anxious/fearful, depressed/sad and her mood continued to be depressed, anxious, and matched her affect. Dr. Farrow diagnosed Claimant with bipolar disorder and PTSD. She started Claimant on

7

Lamictal and continued with Neurontin. (Tr. 528).

On January 23, 2012, Claimant informed Dr. Farrow she was doing badly. She still was very depressed, anxious, having flashbacks, having difficulty sleeping, experienced some hallucinations and some suicidal ideations. She was able to give a valid verbal suicide contract. Dr. Farrow diagnosed Claimant with severe bipolar disorder, psychotic, PTSD, and severe panic with agoraphobia. Claimant was prescribed Neurontin, increased Lamictal, and started Folate and Effexor. (Tr. 574).

On March 12, 2012, Claimant reported doing much worse since she discontinued the Lamictal because of a rash. Her sleep was worse, she was more irritable, depressed, and anxious. Claimant's affect demonstrated worse anxiety and depression. Dr. Farrow diagnosed Claimant with severe bipolar disorder, no longer psychotic, PTSD, and worse panic with agoraphobia. Dr. Farrow continued treatment with Neurontin, Folic Acid, and Effexor and started her on Risperal. (Tr. 571).

On August 1, 2012, Claimant stated she was doing worse but her blood sugars were running high. She had been diagnosed with fibromyalgia and started treatment with Lyrica. Dr. Farrow noted Claimant was experiencing psychomotor retardation and an anxious and depressed mood and affect. (Tr. 565).

On August 17, 2012, Claimant was doing worse with more depression and anxiety. She was not suicidal but she did not care either. Her anxious/fearful, depressed/sad affect was worse as was her depressed, anxious mood. Claimant was diagnosed with bipolar disorder, panic and general anxiety disorder. Dr. Farrow continued treatment with medication. (Tr. 568).

On September 26, 2012, Claimant reported doing worse. She started having severe sweats with the Effexor. She was also more depressed and anxious. Dr. Farrow maintained his diagnosis of severe bipolar disorder, panic and general anxiety disorder. She discontinued the Effexor and started treatment with Lexapro. (Tr. 561).

On January 8, 2013, Claimant sought treatment from Ms. Baugh, feeling "really hopeless." Ms. Baugh noted a depressed mood, vague thoughts of suicide, and poor sleep. (Tr. 558).

The ALJ addressed Claimant's mental problems with only general references to treatment beginning in 2008 and continuing for 6 months. He encapsulated all of the above records with the statement "[d]ifferent medications were tried to improve symptoms, but those medications were stopped." Thereafter, the ALJ concentrated exclusively upon the opinion of the consultative psychological examiner, Dr. Randy Crittenden. (Tr. 17).

9

Certainly, it is well-recognized in this Circuit that an ALJ is not required to discuss every piece of evidence. Clifton v. Chater, 79 F.3d 1007, 1009-10 (10th Cir. 1996). However, he is required to discuss uncontroverted evidence not relied upon and significantly probative evidence that is rejected. Id. at 1010. An ALJ "is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." Haga v. Astrue, 482 F.3d 1205, 1208 (10th Cir. 2007). Essentially, the ALJ ignored the vast majority of the longitudinal medical treatment records related to Claimant's mental problems in favor of the consultative evidence which supported his ultimate finding of non-disability. On remand, the ALJ shall consider the totality of the medical record in arriving at his RFC.

**RFC Determination**

This Court has determined the ALJ erred in failing to adequately consider Claimant's mental impairment. Similarly, the failure to consider the limitations imposed by these impairments also reflects upon the ALJ's RFC evaluation. On remand, the ALJ shall reassess his RFC findings in light of the medical record and extent of limitations brought about by Claimant's mental impairments.

### *De Facto* Reopening of Prior Application

Claimant contends the ALJ effectively reopened a prior application for Social Security benefits by referencing evidence during the relevant period for that application. Discussing evidence from the period encompassed by the prior application alone does not reopen an earlier claim. Hamlin v. Barnhart, 365 F.3d 1208, 1216 n.8 (10th Cir. 2004)(citations omitted). As such is the case, this Court finds the ALJ did not reopen Claimant's previous application.

### Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED and the matter REMANDED** for further proceedings consistent with this Order.

The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 17th day of February, 2015.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE